MARSHALL D. HALL et al., appellants,

*v.*

ROBERT J. BALDWIN et al., respondents.

On bill of interpleader filed by the owner of a building erected by contract in writing, who paid the money due the contractor into court, making all the claimants and owner parties—*Held*, a proper case for such bill; that notices of claims, given to the owner, not in compliance with the statute, give no right to the fund; that an assignment of the money by the contractor to a preferred claimant, in good faith, before any other lien has attached, set up in a supplemental answer and proved, gives such right; that, if ripe for hearing, the court will dispose of all the questions raised, either by deciding them, referring them to a master, or directing an action or issue.

Hall *v.* Baldwin.

On appeal from a decree advised by *Washington B. Williams, Esq.*, advisory master, who filed the following conclusions:

This is a case of interpleader, in which the owner of a house, built by contract, duly filed, has paid the final payment into court, so as to be relieved from the conflicting claims of material-men and workmen, of whom some had served notices on him, under the third section of the Lien law (*Rev. p. 668*), and some held orders from the contractor.

The cases on the construction of this section, and the priorities of such claims and orders, are *Superintendent* v. *Heath, 2 McCart. 22; Craig* v. *Smith, 8 Vr. 549; Reeve* v. *Elmendorf, 9 Vr. 125; Kirtland* v. *Moore, 13 Stew. Eq. 106.*

O'Rourke served notice on the owner September 17th, 1886, at half-past eight A. M., for the last payment under his sub-contract for mason-work with the contractor Miller.

O'Rourke says he did not demand his debt from Miller before he served his notice, which is fatal to his claim. *Kirtland* v. *Moore, 13 Stew. Eq. 106.*

Clark had the sub-contract for painting. His notice is dated the 17th. He, like O'Rourke, did not demand his money from Miller after he finished his work, which is fatal to his claim. Nor does the notice state any refusal by Miller to pay, which is also a fatal defect. *Kirtland* v. *Moore, 13 Stew. Eq. 106.*

The Chapin-Hall Company contracted to furnish sash, doors and blinds, and to hang the blinds. Mr. Hall says he went, on September 18th, between eight and nine A. M., and demanded payment from the contractor and was refused, and thereupon served his notice on the owner, in due form, at quarter-past ten A. M. of the same day. But the proofs do not sustain the burden resting on the claimants of proving satisfactorily that their work was completed and their debt due before they demanded payment.

Nine o'clock A. M. is the latest hour, on the 18th, on which, on Mr. Hall's testimony, we can say the demand was made. As to

NOTE.—For illustrations of when courts will notice fractions of a day or not, see *Doane* v. *Millville Ins. Co., 16 Stew. Eq. 523, note.*—REP.

whether their work was done at that time, Mr. Hall only says he was there during that morning and found it done, but does not state the hour. Clark, who superintended the work, says he got there at eleven A. M. on the 18th, and found the work finished; that on the night previous it was not finished, but there was one bay-window left to finish; that this would take a man two and a half hours to do; that work was usually commenced at seven A. M.; that there was only one man at work, and that he could have finished the job by half-past nine.

It is clear that this does not establish that the work was finished before nine A. M., when their demand was made. It is agreed, however, that the law does not regard fractions of a day.

This question was alluded to in *Kirtland* v. *Moore, 13 Stew. Eq. 106,* but no opinion expressed. I think that the saying, sometimes quoted, that the law does not know or regard fractions of a day, is merely a legal fiction, to be applied where it is convenient, but not where it would defeat any rights.

In *Roe* v. *Hersey, 3 Wils. 274,* the court observes that the proposition, that there are no fractions of a day, is a mere fiction of law, "yet the matter of fact shall overturn the fiction in order to do justice between the parties."

In *Combe* v. *Pitt, 3 Burr. 1423,* Lord Mansfield remarks as follows: "Therefore, notwithstanding the general fiction ' of the whole term's being but one day,' yet, when the priority of action becomes essential and necessary to be ascertained, the particular day must be shown." And again: "But though the law does not, in general, allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see why the very hour may not be so, too, where it is necessary and can be done, for it is not like a mathematical point, which cannot be divided. However, this is not necessary to be determined in the present case."

In *Thomas* v. *Desanges, 2 Barn. & Ald. 586,* the sheriff had seized goods of a defendant, under a *fieri facias,* between one and two P. M., and the defendant committed an act of bankruptcy the same day between six and eight P. M. The assignee claimed the goods, on the ground that the law did not regard the fraction

of a day; but the court held (Abbott, C. J.) that, "as it respects the interests of third persons, the day ought to be divided."

In *Matter of Richardson, 2 Story 571*, it appeared that a petition in bankruptcy had been filed at noon, and that an act repealing the Bankrupt law was approved by the president the same evening. Mr. Justice Story discussed the matter with his usual fullness, and held that the repealer did not relate back, observing that the saying, that the law does not regard fractions of a day, is true only *sub modo*, and is a mere legal fiction, never allowed to operate against the right and justice of the case, and that common sense and common justice, equally, sustain the propriety of allowing fractions of a day whenever it will promote the purposes of substantial justice.

The same view was taken in *Burgess* v. *Salmon, 97 U. S. 381*, where tobacco was stamped and sold in the forenoon, according to the law then in force; but an act, increasing the tax, was approved in the afternoon; and it was held that the latter act should not be applied to this tobacco.

In *Louisville* v. *Savings Bank, 104 U. S. 469*, the subject is treated decisively on a question arising upon municipal bonds in aid of a railway company. The voters of the township of Louisville met, pursuant to lawful notice, on July 2d, 1870, at nine A. M., to decide, by vote, whether a special tax should be levied to contribute to the railway, or bonds be issued in its aid, and the vote was accordingly taken, and resulted in favor of making the bonds.

On the same day a State election was held on the question of the adoption of a new constitution, which was adopted, and which contained a section prohibiting donations or loaning credit by any township to any railway corporation. The law required the polls for this election to remain open until sunset.

The court held that the bonds were good, and quoted the decision of the supreme court of Illinois, in *Grosvenor* v. *Magill, 37 Ill. 239*, on the question whether the law regards fractions of a day, as follows: "It is true that, for many purposes, the law knows no division of a day; but, whenever it becomes important to the ends of justice, or in order to decide upon conflicting

interests, the law will look into fractions of a day, as readily as into the fractions of any other unit of time. The rule is purely one of convenience, which must give way whenever the rights of parties require it. There is no indivisible unity about the day which forbids us, in legal proceedings, to consider its component hours, any more than about a month which restrains us from regarding its constituent days. The law is not made of such unreasonable and arbitrary rules." Mr. Justice Harlan adds: " The views expressed in the last case are consistent with sound reason and public policy. They accord with our own judgment, and are in line with the settled course of decisions in other courts."

It appears, then, that to hold, in this case, that the finishing of the work had relation back to the beginning of the day, would be to use a legal fiction for the purpose of defeating the rights of third persons, and giving preferences which the truth of the facts would not give. In my opinion, this should not be done, and as the Chapin-Hall Company's demand was made before they were entitled to make it, and before their claim had become due, they are not within the statute. *Kirtland* v. *Moore, 13 Stew. Eq. 106.*

It may be added that, if it were suggested that the Chapin-Hall Company might bring an action against the contractor before hanging the blinds on this bay-window, on the ground that there had been substantial performance without it, this would not help them, for, in such a suit, they would have to deduct, at any rate, the value of the work not performed when suit was begun, and then it would appear that their demand and notice called for more money than was justly due to them, which would be fatal, under *Reeve* v. *Elmendorf, 9 Vr. 125.*

A. P. Littell & Son served a notice on the 18th of September, 1886, which they abandoned at the hearing as defective in form, and, perhaps, on account of their own proof, that the plumbing-work was not finally completed until the 20th.

Baldwin built the stairs, and says he demanded payment of the contractor on the 18th, and served notice on the owner that day at about three P. M. His notice does not say that payment

was " refused," as the statute requires, but merely that Miller had " neglected " to pay him.  The statute evidently means that the notice shall set forth, if not in the precise statutory words, yet in equivalent words what amounts to a refusal by the contractor, after his attention is called to the fact that the work is done and the debt due.  Refusal implies some request; it is more than omission or neglect.

It was not the design of this statute that the contractor should be deprived of his right to receive his money from the owner by a mere delay in paying a sub-contractor or workman; for it expressly provides that demand shall first be made upon him and followed by refusal on his part before the statutory procedure can be followed out by the creditor; and the language of the notice should conform substantially to this idea.  In my opinion, a notice stating that a contractor has " neglected " to pay, does not meet the statutory requirement, that the notice shall state a refusal to pay.

Rowland, Vincent and Fredericks were workmen under the contractor, whose notices were all served on the owner between twelve at night and one in the morning of September 18th. They are all alike defective, in not stating the contractor's refusal to pay.

It thus appears that all the notices served under the third section must be rejected.

The next claims are the two orders given by Miller on the owner, on September 20th—one to A. P. Littell & Son, for $265; and one to J. S. Littell, for $66.58.  These orders, under *Superintendent* v. *Heath, 2 McCart. 22,* are equitable assignments of so much of the fund, and it is conceded that the order for $265 stands first.

These orders are to be paid in full.  The remainder of the fund was paid into court by the owner, to relieve himself from all claim by any of the defendants, as well the contractor as the claimants.  The owner, then, has no further right to the fund. He has transferred it for the benefit of whom it may concern. None of the claimants have shown themselves entitled to it under the third section of the Lien law.  What is to be done with it?

The contractor appears to have the legal title to it, but he is a defendant, and has made no claim, and may, therefore, be regarded as assenting to the view that the fund shall be treated as impressed with a trust, to be administered by this court for the benefit of the other claimants, who, in fact, furnished the materials and labor which produced it.

In administering it as between such creditors, who are equally meritorious, equality is equity.

The residue of the fund should, therefore, in my opinion, be divided ratably among the creditors before the court; each defendant paying his own costs. The pleadings may require amendment to give a basis for this relief, and, if other claimants of the same class exist, perhaps a way might be devised for them to come in. Or, if there are any other views which ought to be heard, they may be presented.

*Messrs. Coult & Howell*, for the appellant.

*Messrs. Fort & Smith*, for the respondent.

The opinion of the court was delivered by

SCUDDER, J.

Aaron W. Miller erected a dwelling-house for Charles A. Hunt, the contract price of which was $3,290. When the building was completed, the last payment of $1,140 under the contract came due, several materialmen and laborers served notices on the owner, under the third section of the Mechanics' Lien law, to retain the money and pay their claims. The owner paid the money into court, and filed a bill in the nature of interpleader. The amount now in court, after deducting costs, and the claims of A. P. Littell & Son, and of J. S. Littell, and their costs, is $689.92.

All of the claimants filed answers, setting up their claims under the statute. The appellants, who were also claimants, by leave of court, filed a supplemental or additional answer, setting forth an assignment to them, by the name of the Chapin-Hall Manufacturing Company, for a valuable consideration, of all the

Hall *v.* Baldwin.

right, title and interest in and to any and all moneys due to him under the contract with Charles A. Hunt for the erection of a house on Thomas street, Newark, N. J.

This was in writing, duly executed by Aaron W. Miller, the builder, and dated February 22d, 1889. Their debt, interest and costs amounted to $600, on September 18th, 1886, when notice was served.

The court determined, that all the several claimants who had served notices on the owner, Miller, had not complied with the form of the statute, or established any right to the moneys in court; that Aaron P. Littell, Hiram E. Littell and John S. Littell, had equitable assignments of portions of the fund in court, for the payment of their claims, by orders drawn by Miller on Hunt for the amount of each claim, respectively, which were entitled to priority of payment out of the fund in court. It also held that the assignment made by Miller to the appellants, Hall, Kent and Parker, subsequent to the final hearing, but before the decision of the cause, which was produced and admitted in open court, was not a lawful assignment of any portion of the fund, and that the relief prayed by the supplemental answer should not be granted.

The contractor, Miller, having filed no answer in the cause, nor made claim to the fund, was adjudged to consent to an equitable distribution of the moneys remaining in court, after the payment of the claims of A. P. Littell, H. E. Littell and J. S. Littell, respectively, among all of the other claimants.

In case of a regular bill of interpleader, the only decree to which the complainant is entitled is, that the bill was properly filed; that he pay the money into court, and be dismissed with his costs. The defendant in that bill may answer and deny his right to such decree. The court, after the decree, proceeds to determine the controversy between the defendants, and for this purpose either directs an action to be brought, or an issue to be tried at law, or a reference to a master. *Barton's Suit in Equity 69; Story Eq. Pl. 297 (a); 3 Dan. Ch. Pr. 1764.*

It has, however, become the practice, without regarding this regular form of proceeding, to dispose of all the questions arising

Hall *v.* Baldwin.

upon bills of interpleader according to the nature of the questions and the manner in which they are brought before the court. If ripe for hearing, the court decides them ; if not, they are referred to a master, or the court directs an action or an issue. *Condit* v. *King, 2 Beas. 375.*

There is no difficulty in a case like the present in proceeding in this way, for the answers are filed and the proof of the respective claims is complete, and there is no question of the complainant's right to be discharged on payment of the money into court, without further litigation.

But we think, on the proofs offered, that the decree cannot be sustained.

After deciding that the claimants, by informal notices to the owner to retain the moneys in his hands belonging to the contractor, had not complied with the statute, the court had finally disposed of these claims ; for it is only by compliance with the statute that they could obtain a lien on the money in the hands of the owner, due to the contractor. Unless this be done, they are in no better condition than creditors at large.

The court could not, therefore, proceed to make distribution of the balance of money in hand, in proportion to the amount of the several·claims which had been decreed not to be liens on the fund.

There is no doubt, also, that on the failure of these claimants to establish their liens, the money in court belonged to Miller, the contractor, and he could make a legal assignment of the same, in good faith, to any other creditors whom he chose to prefer. This he did by the assignment to the appellants, Hall, Kent and Parker, before any other lien had attached. This was proved and admitted to be a regularly executed assignment, and it passed all Miller's right to the fund, for the payment of their claims against him. The appellants are entitled to the amount of their claims under this assignment, and costs on the appeal. If there be any balance it belongs to Miller, and should be paid on his order.

*Decree unanimously reversed.*