CAMDEN IRON WORKS

*v.*

CITY OF CAMDEN.

60  211
61  241
62  495

60  211
r64  723

[Filed September 29th, 1900.]

1. Under an agreement to sell to P., contractor for certain work, such quantities of iron pipe as P. may desire, to be delivered within a certain time after each monthly order for same, there is no liability for pipes not shipped and not ordered by P.

2. Under a contract for sale, by the pound, of iron pipes, they to be of a certain length and weight, overweight not to be paid for, there can be no recovery for overweight because of an excess in length, where the purchaser does not accept them with knowledge of this.

3. A manufacturer of iron, who furnished iron pipes to a contractor for construction of city water-works, is within the statute (*Gen. Stat. p. 2078*) giving a lien to a "mechanic, merchant or trader" who is employed on or furnishes material for a city improvement.

4. A lien for materials furnished the contractor for a city improvement is not wholly void because for an amount greater than can be enforced, the claim not being fraudulently padded; but the excess in the claim having arisen from want of care in making it, and the moneys belonging to the contractor being thereby tied up, interest on the claim from the filing of the lien will be disallowed.

This is a suit to enforce a lien under the act of March 30th, 1892 (*Gen. Stat. p. 2078*), to secure the payment of laborers, mechanics, merchants or traders and persons employed upon or furnishing materials towards the performing of any work in public improvements in cities, towns, townships and other municipalities in this state.

*Mr. Edward A. Armstrong* and *Mr. David J. Pancoast,* for the complainant.

*Mr. Samuel H. Grey,* for the defendant George Pfeiffer.

REED, V. C.

Mr. George Pfeiffer, Jr., entered into a contract with the city of Camden on June 24th, 1899, to construct a municipal water-works. Some dispute having arisen in respect to the execution of the work, and in respect to the amount due by the city, the matters were settled on May 25th, 1899, by an agreement which fixed the amount still due at the sum of $120,000; of this sum there is still in the hands of the city, to the credit of Mr. Pfeiffer the sum of $38,759.04. Under date of May 18th, 1898, the Camden Iron Works served a notice upon the city of Camden, claiming that Mr. Pfeiffer owed it the sum of $32,228.45.

The claim attached to the notice displayed a demand for castings shipped, the sum of $54,971.65, with a credit of $36,307.55, leaving a balance due amounting to $18,664.10. The charges were at the rate of $22.50 per two thousand pounds.

In addition to this claim there was another for two hundred and twenty-five pieces of thirty-inch and thirty-four pieces of

Camden Iron Works *v.* Camden.

thirty six-inch pipe, made and held subject to order, amounting in price to $11,714.70. These two claims together with interest amounting to $1,324.21, made up the entire amount of the claim, namely, $32,228.45.

The claim for $11,714.70 for pipe not shipped, must be disallowed. There were two contracts between Mr. Pfeiffer and the Camden Iron Works, one for furnishing a stand-pipe, and another dated October 31st, 1896, for castings. It is under the contract of October 31st, 1896, that the claim for castings not shipped, but held subject to order, must fall. Under that contract the Camden Iron Works agreed to sell such quantities of straight pipes and special castings as Mr. Pfciffer may desire at the price of $21.64 per ton of two thousand two hundred and forty pounds for all straight pipe, and $24 per ton of two thousand two hundred and forty pounds for all ball joints, and two and one-quarter cents a pound for all special castings, delivered f. o. b. cars at Camden, consigned to such freight station or stations between certain points on the Pennsylvania railroad as Mr. Pfeiffer should from time to time designate. The pipe and castings were to be delivered at such designated stations within thirty days after each written monthly order for the same.

The pipes not shipped were never ordered by Mr. Pfeiffer, either verbally or by writing. It appears, also, that these pipes have been sold to other parties by the complainant. Under the terms of the contract, Mr. Pfeiffer is not liable to pay for them.

In respect to the claim for the pipes actually shipped, there is an overcharge in the price charged per ton. The castings included in this claim are "all pipes and special castings," and the prices are fixed by the contract of 31st October. Instead of adhering to the prices designated in this contract, charges are made at the rate of $22.50 for two thousand pounds. There should be a reduction for the difference.

Then there must be a reduction for overweight. The contract provides that any overweight in excess of one per cent. is not to be paid for. The contract states that the water pipe, hub and spigot, shall be twelve feet lengths. Now the total weight divided by the number of lengths, shows an excess in weight of more than one per cent. In explanation of this, it is

said th'at the pipes as actually cast, run from three to four inches over the strict measure. But there is no proof aside from this general statement that these did, and that Mr. Pfeiffer, knowing this, accepted them.

· Nor is there proof of a general usage in the trade, of which Senator Pfeiffer must have had notice, that when the length of cast pipes is stated in a contract, it is understood to mean three or four inches more than the lengths stated. There must be a reduction for this excess in weight.

Then it is admitted that there must be a reduction for the tool-house of $48.69.

I think there should be also a reduction for pipes No. 36 and No. 215, as I think they were defective.

So far in respect to the merits of the claim itself.

The defence, however, does not rest upon a claim of overcharge, but it is insisted that the bill to enforce the lien should be dismissed. In support of this insistence, it is urged that this claim is not included within the provisions of the act of March 30th, 1892, because the complainant does not stand in the posture of a laborer, mechanic, merchant or trader, and it is only the class of persons mentioned in the first section of the act that can claim the benefit of its provisions. It is perceived that the title of the act is broader than the first section, inasmuch as the title covers, not only the class mentioned, but also persons employed upon or furnishing materials towards the performing of any work in public improvements, &c. I am of the opinion that the term "mechanic, merchant or trader," is broad enough to include the Camden Iron Works who furnished material towards the performance and completion of this contract.

· It is secondly insisted that the bill should be dismissed upon the ground that the lien as filed was for an amount so greatly in excess of that due the lienor as to exhibit a fraudulent purpose. If I were satisfied that the excess in the claim so filed was introduced into the claim for the purpose of tying up the money due to Mr. Pfeiffer, and to coerce him into making a settlement upon the claimant's terms, I would not hesitate a moment to dismiss the bill. If any creditor willfully files a

claim for an amount in excess of what he knows is due to him, he perverts the purpose of the statute, and no court would assist him in his fraudulent purpose. But a claim which may seem to a judge to be without legal foundation, may seem to a creditor and his lawyer to be valid, or to have at least a chance of judicial establishment; and because the attorney may have been mistaken and the claim turns out to be partially invalid, it does not follow that the whole claim should be branded as fraudulent and the lien discharged. I do not think the present claim was fraudulently padded. So far as to the excessive price charged, counsel relies upon the agreement previous to October 31st, 1896, and in respect to the charges for the manufactured and unshipped castings, upon a general understanding that he could go on and manufacture in advance of specific orders. But while I do not regard the claim as fraudulently made, I do think it was made without that care which should attend the filing of a lien under the statute. The effect of it was to tie up moneys which belonged to Senator Pfeiffer, in the hands of the financial officers of the city of Camden, thus depriving him of the interest and use of the same; for this reason I think interest upon the claim should be disallowed, at least from the time of the filing of the mechanics' lien.

Unless counsel can agree upon the amount which a calculation in accordance with the views herein expressed will produce, I will refer it to a master.