LOUIS D. GREGORY

*v.*

FREDERICK N. LEWIS et al.

KNIGHT & DE MICCO, INCORPORATED, a corporation of New
York,

*v.*

FREDERICK N. LEWIS et al.

[Submitted October 31st, 1916.   Decided November 9th, 1916.]

1. A claimant of a mechanics' lien against a municipality must sub-
stantially comply with the requirements of the Mechanics' Lien act.

2. Verification of a lien claim by the secretary of the claimant to the
best of his knowledge, information and belief, is sufficiently specific.

3. A claim for more than is actually due will not defeat the lien
unless it is knowingly and consciously excessive and untrue.

4. Failure to give statutory notice to the city cannot be raised on a
motion to dismiss a bill.

On bill, &c.

*Messrs. Hartshorne, Insley & Leake,* for the complainants.

*Messrs. Church & Harrison,* for the defendants.

BACKES, V. C.

The object of these bills is to enforce municipal liens under
the act entitled "An act to secure the payment of laborers, me-
chanics, merchants, traders and persons employed upon or fur-
nishing materials toward the performing of any work in public
improvements in cities, towns, townships and other municipali-
ties in this state." *Comp. Stat. p. 3315.* Motion is now made by

the defendant Lewis to dismiss them because they show on their face that the complainants are not entitled to liens. The bills are identical, except as to the names of the lienors and the amounts claimed. The facts disclosed by, or reasonably to be inferred from, the pleadings, are that the city of East Orange entered into a contract with the defendant Frederick N. Lewis for the laying of water mains in the city of East Orange, according to plans and specifications annexed to the contract in the possession of the city. The terms of the contract are not given. The complainant, Knight & De Micco, Inc., contracted with Lewis for the laying of the water mains under division "A" of the contract, and Gregory for the laying of the mains under divisions "B" and "C." The contracts are in the shape of letter communications which are annexed to the bills. Knight & De Micco, Inc.'s proposal to Lewis, which was accepted, was to

"furnish all labor and materials to complete section 'A' of your contract with the city of East Orange to lay water mains, bids for which were opened on August 26th, 1915, in accordance with plans and specifications for ninety-four per cent. of the unit prices bid by you."

Gregory's proposition was

"to furnish all labor and materials necessary to complete divisions B and C of your contract with the city of East Orange, New Jersey, for laying water mains, all in accordance with the plans and specifications for the unit prices bid by you and accepted by the city, and named in your contract."

Gregory was to receive all of the payments to be made by the city for performing the contract under divisions B and C, and out of the final payment was to pay Lewis $500. The complainants allege that they performed their respective contracts, and that there is due to Knight & De Micco, Inc., $6,937.62, and to Gregory $10,236.68, as per itemized statements annexed to the bills, after allowing all credits and set-offs; that the labor and materials were exclusively used for the laying of said water pipes in the city of East Orange, and that the amounts so due became due and payable on or about the 24th day of December, 1915. On May 4th, 1916, before the work was accepted by the city of East Orange, the complainants filed their notices of claim with

the proper officers of the city of East Orange, pursuant to section 2 of the Municipal Lien act, copies of which notices are annexed to the bills and made a part thereof, and at the same time each filed a bond with the treasurer of the city, as required by the statute. The amount of money in the hands of the city is not stated, but it is alleged to be a large sum.

The bills are attacked on the grounds that the notices of lien (1) fail to state the terms, time given and conditions of *his* contract; (2) were not verified; (3) were for sums grossly in excess of the amount due and owing; and also (4) that notices of the suit were not served upon the city. In order to entitle the complainants to the benefit of the security afforded by the statute, there must be a substantial compliance with its requirements. *Somers Brick Co.* v. *Souder, 70 N. J. Eq. 388.*

(1) As to the first point: The notices are sufficient. Copies of the correspondence between the complainants and Lewis are incorporated in and made a part of the notices. The proposals and acceptances disclose that the complainants agreed to execute the respective parts of the contract which Lewis had with the city, upon the same terms, time given and conditions as stipulated by Lewis—in one instance upon a percentage basis, and in the other upon the payment of a lump sum. A reference to the city's contract with Lewis, and notice to it that the complainants agreed with Lewis to perform it upon the basis just stated, was the information to which the city was entitled by the statute. Of its contract with Lewis, of course the city was fully informed, and to incorporate it in the notices of lien would have been useless and was not required. *National Fire Proofing Co.* v. *Daly, 76 N. J. Eq. 35.*

(2) The Knight & De Micco, Inc.'s notice was verified by its secretary and the other by Gregory himself. The verifications are appended to the notices in which the affiants aver "that the facts and circumstances, matters and things set forth in the foregoing claim are true to the best of his knowledge, information and belief." The objection to the verification is: that it should have been as specific of facts as the notice itself; and, in support. I am referred to that part of the opinion of *Camden Iron Works* v. *Camden, 64 N. J. Eq. 723,* in which

the court of errors and appeals, in discussing section 2 of the act, said that "the language of our statute in the case before us requires that the claim shall be verified, stating the amount claimed; that there shall be a deduction of all just credits and offsets, and an affirmation that the labor was performed or the materials were furnished and 'were actually performed or used in the execution or completion of the said contract with said city.' This statute clearly requires an honest and truthful statement of the claim for labor performed or material furnished in the execution of the contract, and, in order to make the accuracy of the statement quite essential, the statute provides that the verification shall be that the work was actually performed or the material actually used in the execution or completion of the contract." I have examined the record of that case (*E. & A. Records, vol. 289*) and find that the verifications to the claims were general, as in the present cases. In the prefatory statement of the opinion, the learned judge, who spoke for the court, stated that "both claims were duly verified as required by the statute," and as I read and understand his language above quoted, he simply emphasized the necessity of the notices containing a truthful statement of the facts, since they were required to be sworn to by the claimants.

(3) The next objection is more troublesome. Each of the complainants included in their notice a large sum for consequential damages arising out of a breach of their respective contracts with Lewis. To Knight & De Micco, Inc., there is due, under the contract, $1,781.60, to which it added $5,156.02 for damages; and to Gregory there is owing $1,916.25, to which he added $8,320.43 for damages. The statute gives a lien only for labor and materials actually performed or furnished towards the performance or completion of the contract. The lien does not extend to damages for a breach of the contract. *Rock. Mech. Liens § 25; Dennistoun* v. *McAllister, 4 E. D. Smith 729; Morgan* v. *Taylor, 5 N. Y. Supp. 920.* The question, therefore, is whether by the inclusion of the items of unliquidated damages the complainants have forfeited their liens, and the answer is to be found in the motives actuating them in overstating their claim, for if this was done in good faith, they ought not to be

penalized and suffered to lose the benefit of the statute to the amount of their just dues. Our act was copied from the New York statute, and the court of appeals of that state has adopted the rule that statements of fact contained in the notice of the claim which are shown to be untrue, will not forfeit the lien or render the notice void or ineffectual, unless the untruthful statements were willfully or intentionally false in some important or material respect. *Aeschlimann* v. *Presbyterian Hospital, 165 N. Y. 296; Ringle* v. *Wallis Iron Works, 149 N. Y. 439;* see, also, *New Jersey Steel and Iron Co.* v. *Robinson, 85 App. Div. 512; General Fireproofing Co.* v. *Keepsdry Construction Co., 158 N. Y. Supp. 567.* In *Camden Iron Works* v. *Camden, supra,* the court of errors and appeals varied the phraseology and held it to be clear, upon authority, "that the rule applicable to the right of the claimant in this case to a lien upon the funds of the city of Camden due to Pfeiffer, the contractor, is that if the account as filed is not the amount of the demand which is truly and substantially due to the claimant, after deducting all just credits and set-offs, but is knowingly and consciously excessive and untrue, it will not be enforced as a lien." In that case, the complainant wittingly inserted in its claim two items amounting to $11,714.70 for "pipe made and held subject to order," and the court, in commenting upon the claimant's conduct in preferring its claim, uses this significant language: "It would be difficult to examine the facts in this case and reach any conclusion which would relieve the claimant from the imputation of filing with the city of Camden an inaccurate, untrue, excessive and oppressive claim under the terms of its contract with Pfeiffer. It is self-evident that the claimant charged, in excess of the amount fixed by the contract upon the straight pipes shipped under it to Pfeiffer, $3,746.56. It is equally clear that, under the plain letter of the same contract, the whole charge of $11,714.70, in the claim which makes up the $32,228.45, was absolutely without any basis of right. A careful examination of the testimony fails to disclose a single statement in the evidence of the president of the Camden Iron Works, or by any other witness called on its part, in explanation or in justification of either the excessive charge of $3,746.56 or the wholly improper

inclusion of the $11,714.70 in the claim. The letter of Pfeiffer to the Camden Iron Works of February 10th, 1897, shows that the impropriety and wholly baseless character of such a claim was brought to the attention of the claimant, in great detail, over four months before the claimant filed with the clerk of the city of Camden its inaccurate, untrue, excessive and oppressive claim. It is an irresistible conclusion that it filed this lien notice against both light and knowledge. The letters in evidence, the testimony of the president of the company, the whole course of conduct of the claimant company in relation to garnisheeing other funds of Pfeiffer in a trust company in Philadelphia after, or at the time of, the filing of its lien notices with the city of Camden, is so flagrantly unfair, unjust and oppressive as to give the irresistible inference that the act of the claimant company, in filing its lien for an untrue and excessive amount, was knowingly and consciously done. It is not even pretended that it had legal advice that its lien notice, as filed, contained claims which it might justly make under its contract with Pfeiffer."

An analysis of these observations applied to the rule adopted in that case, makes it plain that in order to justify a dismissal of the bills, it must appear that the complainants consciously inserted in their notices the items for unliquidated damages, knowing them to be false, as claims under the statute. In the notices complainants claim a lien upon all the moneys due, or to grow due, to Lewis from the city, to the amount of the gross sums. These they allege are due and owing, after deducting all just credits and set-offs, and further, that the work was actually performed and the materials were actually furnished to Lewis, and that the same were actually used in the completion of the contract with the city. The notices, however, contain an explanation, somewhat obscure, it is true, of the claim for unliquidated damages. From it may be gathered that the city was to furnish the water mains, or some of them, to Lewis, and that Lewis in turn was to supply them to the complainants within a reasonable time, in order to properly prosecute the contract and to complete it before freezing time; that Lewis failed in this, and due to his neglect the complainants kept skilled men on the job awaiting deliveries, and were obliged to use this labor for

inferior work, and that they also incurred additional items of expenses by reason of the frozen ground and snow storms. Annexed to and made a part of the claim is a schedule showing the sums actually earned under the contract and the amounts of money laid out and expended by reason of the breach of the contract. The bills also give the same explanation.

Now, although the complainants were not entitled to liens for the consequential damages, and they ought not to have been included in the notices, it does not follow that the demands were knowingly and consciously untrue, i. e., false. That the complainants were subjected to the extra outlay by reason of the breach of the contract by Lewis, and that the expenses were actually incurred in completing the contract, is admitted. The inclusion of the offending items may have been the result of a misconception of the law, or due to faulty advice of counsel. If the matter is reduced to inference, that of innocence must prevail. The fact that the notices frankly assert that part of the claim, and how much was made up of damages, refutes the charge of deception. The "unfair, unjust and oppressive" conduct which characterized the *Camden Case* is not to be attributed to them. Whatever may have been the motive, the complainants are entitled to their day in court to explain. On the face of the pleadings it does not appear that they came into court with unclean hands, and their claims should not be summarily rejected on a motion of this kind.

(4) The fourth section of the act provides that suit to enforce the claim must be commenced within ninety days, notice whereof must be given to the municipality. The bills were filed August 2d, 1916, and it is stated by counsel that the notices were served the day before. If this be true, it cannot be taken notice of on this motion, which is in the nature of a demurrer to the bills. Notice of suit may be given contemporaneously or subsequent to the commencement of the suit, and, manifestly, it need not and cannot be pleaded. A failure must be given by way of defence.

The motion is denied, with costs.