Watts was the engineer employed by Bang, the contractor. He claimed that Bang promised to pay him $1,000 a month; Bang testified the agreed salary was $100 a week. If the former was the fact, Watts' claim was valid. If the latter was true, he had been paid in full and his claim was properly rejected. The master found that Watts was employed at $100 a week; the evidence, though conflicting, supports the finding and therefore the finding will be sustained. "A master's finding of a fact in issue is entitled to great weight and should not be disturbed when there is a serious conflict of evidence." Bagley and Sewall Co.
v. Traders' Paper Board Co., 86 Atl. Rep. 1029; RiversideApartment Corp. v. Capitol Construction Co., 107 N.J. Eq. 405.
Watts also excepts in rather general terms to rulings of the master on the examination of witnesses. These exceptions must be overruled, since on the argument, his counsel was unable to point out any erroneous rulings which could have injured him.
The only exception to the allowance of the Knobles' claim which I need consider, is that the claim should have been totally rejected because it was made for a sum greater than was actually due and because the claimants knowingly and consciously made such excessive claim. The notice of claim which these defendants served on the borough sets forth:
"A statement of the labor performed and material furnished, all of which were actually performed and used in the erection and completion of the said contract, are as follows: The work was started on March 25th, 1930, and continued until November 22d 1930. *Page 311 
4,486 cu. yds. excavation @ .97 Cu. Yd. ...................... $4,351.42
3,500 " " fill " .73 " " ...................... 2,555.00
5,743 " " Filter Mat " 2.50 " " ...................... 14,357.50
 104.14 cu. yds. gravel " 2.50 " " ...................... 260.35
 52.07 " " sand " 1.85 " " ...................... 96.32
 100 cu. yds. stone " 2.50 " " ...................... 250.00
 400 " " white stone " 6.00 " " ...................... 2,400.00
 __________
 $24,270.59
 For Extra Work for Charles Bang.
1,398 cu. yds. excavation @ $ .97 cu. yd. ..................... $1,356.06
1,398 " " back fill " .20 " " ..................... 279.60
28 1/2 hrs. hoisting elevator for concrete @ $4.00 per hr. .... 114.00
22 hrs. shovel on Final Settling Basin @ $6.00 per hr. ........ 132.00
2 men (45 Hours) @ $0.55 per hr. .............................. 22.00
Truck hire for 2 1/4 days ..................................... 30.00
 __________
 $1,933.66
Amount of Bill for work and material on plant ................. $26,204.25
Amount received from Charles Bang ............................. 19,458.54
 __________
Amount due .................................................... $6,745.71"

"The amount of claimant's demand after deducting all credits and offsets is $6,745.83, together with interest. The moneys became due to claimants on the 22d day of November, 1930, and were due from the said Charles Bang with whom claimants had a contract and for whom the materials were supplied." Attached to the notice was an affidavit by both defendants setting forth, in part, "more particularly is it true that we have performed labor and supplied materials which were actually used upon a certain sewage disposal plant for the construction of which Charles Bang had a contract with the borough of Hawthorne * * * and this work and the materials were actually used in the construction of the work. * * * There is now due to us after deducting all past credits and offsets the sum of $6,745.71, with interest."
Among the items so claimed is four hundred cubic yards of white stone at $6 a yard, $2,400. The master found that only one hundred and eighty-nine yards of white stone had been furnished and therefore deducted from the claim $1,266 for the two hundred and eleven cubic yards claimed but not furnished, and the master allowed the balance of the claim, *Page 312 
$5,479.71. Mr. Walter Knoble testified in support of the claim of his firm that they actually supplied and delivered on the job only one hundred and ninety-seven cubic yards of white stone; that they had contracted with a third party to purchase four hundred cubic yards for the purpose of this job; "we have to pay for it and we have no other use for the stone;" that the balance of the stone has not actually been delivered to the Knobles but is still at the quarry; that it is, however, available when wanted and subject to the orders of the borough engineer; that the job is not completed as far as the Knobles' work is concerned. It also appeared that the engineer's original estimate of the amount of materials required for the sewage plant, called for four hundred cubic yards of white stone.
Counsel for the Knobles readily concede that claimants have no lien for the stone not furnished to Bang or used in the sewage disposal plant. The question argued is this: Have the Knobles, by claiming for four hundred cubic yards of stone when they furnished only one hundred and eighty-nine, forfeited their lien for the materials actually furnished and the labor performed by them in the execution of the contract? The Knobles say that the excessive claim was made in good faith, in the belief they were entitled to a lien for all the stone even though they knew part remained undelivered; that, therefore, their lien is not lost, since forfeiture of the lien results only from fraud or from the willful making of an excessive claim. The exceptants contend that a lien is lost not only when an inflated claim is made fraudulently or willfully, but also when such a claim is a product of the gross negligence of the claimant; that the Knobles, knowing they had delivered only part of the stone, set forth in their claim that they had delivered it all; that whether this misstatement was willfully or negligently made, the lien is lost, regardless of the belief of the Knobles that they were entitled to payment for undelivered stone.
The Municipal Mechanics' Lien law (P.L. 1918 p. 1041 § 1) gives a lien for the value of labor performed and materials furnished toward the performance of the contract with *Page 313 
the municipality. Section 2 requires the claimant to file with the municipality a verified notice of claim which shall state "the amount claimed, from whom due, and if not due, when it will be due, and shall state as nearly as may be the amount of the demand after deducting all just credits and offsets. * * * And shall allege that the labor was performed or materials furnished to the said contractor or subcontractor, specifying which, and that they were actually performed or used in the execution or completion of the said contract with the said municipality." These provisions are primarily derived from P.L. 1892 p. 369.
The language relating to the amount of the claim is identical in both acts except that the older statute lacks the phrase "as nearly as may be." This phrase seems to have been first introduced in the revision of 1918.
Camden Iron Works v. City of Camden, 60 N.J. Eq. 211;reversed, 64 N.J. Eq. 723, was based on the Municipal Mechanics' Lien law of 1892. Vice-Chancellor Reed dealt with a claim for $32,228; he struck out one item of $11,715 claimed for pipe not actually delivered, reduced the balance to $14,499, and allowed the claim in that sum. He held that if a fraudulent purpose for claiming an excessive sum were shown, the lien would be forfeited, but where the party and his counsel deemed the larger claim worthy of submission to judicial determination, the fact that it was found to be partially invalid did not brand the whole claim fraudulent and discharge the lien. He added that the claim was made "without that care which should attend the filing of a lien under the statute." This decision of the court of chancery was followed by Vice-Chancellor Grey in Garrison v. Borio,61 N.J. Eq. 236, and by Vice-Chancellor Pitney in James P. Hall,Inc., Co. v. Mayor, c., of Jersey City, 62 N.J. Eq. 489. The latter wrote, "that a mistake in stating the amount of the claim by which it is made larger than it afterwards turns out actually to be, is not fatal unless made intentionally for the purpose of inflating the claim."
After these cases were decided, the Camden Iron Works decree was reversed by the court of errors and appeals and *Page 314 
the disputed claim disallowed entirely. Mr. Justice Fort wrote: "The requirement of the statute, therefore, is an accurate verified account with a statement thereon of all just credits and offsets. Good faith in the claim and accuracy in its statement are made the basal foundations of its right to be enforced against moneys due a contractor from a city." And again, "this statute clearly requires an honest and truthful statement of the claim for labor performed or material furnished in the execution of the contract and in order to make the accuracy of the statement quite essential, the statute provides that the verification shall be that the work was actually performed or the material actually used in the execution or completion of the contract. The statute is not broad enough to cover materials not actually used in the construction of the city work. The reason for this must be quite obvious. The swearing to an erroneous claim thoughtlessly and carelessly without any effort to obtain accessible data from which the error might be corrected, is swearing willfully and knowingly (Gibbs v. Hanchette, 90 Mich. 657), in the statement of a fact which could have been avoided by reasonable diligence, the lien is lost. Nicolai v. VanFridagh, 23 Or. 149. A material misstatement in a claim, if made fraudulently or what is about the same thing, made willfully and knowingly violates the lien altogether." And he summed up the rule applicable: "If the account as filed is not the amount of the demand which is truly and substantially due to the claimant after deducting all just credits and setoffs, but is knowingly and consciously excessive and untrue, it will not be enforced as a lien." The court of errors and appeals also put on the claimant the burden of proving that the excessive part of the claim was made in good faith.
Gregory v. Lewis, 87 N.J. Eq. 127, was decided by Vice-Chancellor Backes in 1916. The case came before him on a motion to dismiss the bill because the claims of complainants were excessive and therefore invalid. They included a large sum for consequential damages arising out of a breach of the contract with the principal contractor. "The statute gives a lien only for labor and materials actually performed *Page 315 
or furnished towards the performance or completion of the contract. The lien does not extend to damages for a breach of the contract. * * * The question, therefore, is whether, by the inclusion of unliquidated damages, the complainants have forfeited their liens, and the answer is to be found in the motives actuating them in overstating their claims, for if this was done in good faith, they ought not to be penalized and suffered to lose the benefit of the statute to the amount of their just dues. * * * The inclusion of the offending items may have been the result of a misconception of the law or due to faulty advice of counsel. If the matter is reduced to inference, that of innocence must prevail. The fact that the notices frankly assert that part of the claim and how much was made up of damages, refutes the charge of deception." The motion to dismiss was denied. "Whatever may have been the cause, the complainants are entitled to their day in court to explain. On the fact of the pleadings, it does not appear that they came into court with unclean hands and their claims should not be summarily rejected on a motion of this kind."
The provision of the Municipal Mechanics' Lien law relating to the notice of claim may be compared with section 3 of the Mechanics' Lien act of 1898, relating to stop-notices; in CamdenIron Works v. City of Camden, supra, and in Taylor v. Wahl,69 N.J. Law 471, it is suggested that the principles controlling claims under both acts are the same. Section 3 of the act of 1898 authorized the claimant to give to the owner notice "of the amount due to him or them." The legislature, by P.L. 1910p. 500, added "specifying said amount as nearly as possible." Before the amendment of 1910, a failure to state in the stop-notice with absolute accuracy the amount due, was fatal.Reeve v. Elmendorf, 38 N.J. Law 125; Hall v. Baldwin,45 N.J. Eq. 858. Chief-Justice Gummere, writing for the supreme court in Tuttle v. Cadwell, 92 N.J. Law 26, said of the amendment: "Its purpose is to relieve the materialman from stating in his stop-notice the amount due with absolute accuracy. But it *Page 316 
requires him to state in that notice the amount of his claim against the contractor with as much accuracy as is reasonably possible. * * * In order to take advantage of the statute, when it appears that the amount specified in the stop-notice is in excess of the amount actually due, we think the burden rests upon the materialman to show that the excessive claim was not the result of carelessness and that the mistake had been made notwithstanding the fact that he had used every reasonable effort to ascertain with exactness the amount which he was entitled to impound in the hands of the owner." To the same effect isIntili v. Bonnet, 6 N.J. Mis. R. 1043; 143 Atl. Rep. 741.
I have found no decision on the Municipal Mechanics' Lien law of 1918, and the words therein "as nearly as may be." If, before that enactment, a claim for an excessive amount was valid when it sprang from the carelessness of the claimant and not from any willful or fraudulent intent, then I think the new statute requires a greater degree of accuracy. A claimant who, through gross carelessness, demands an excessive amount, does not state the amount "as nearly as may be." But whatever the rule before 1918, a claimant is now required, in my opinion, to make a reasonable effort to ascertain the true facts on which the amount of his demand depends; and if through failure to do so, it comes about that he claims a materially larger amount than is owing, then his lien is lost.
The Knobles, in their claim, listed among the material furnished and actually used in the work, four hundred cubic yards of stone for which they charged $2,400. They swore that "the materials were actually used in the construction of the work." This was not the fact; only one hundred and eighty-nine yards of stone had been furnished by them, as they knew or might readily have ascertained if they had taken any pains to do so. Their claim was inflated by charging for two hundred and eleven cubic yards at $6 a yard, or $1,266. They explain their excessive claim by testimony that they would have to pay for four hundred cubic yards of stone, and *Page 317 
that they stand ready to deliver the full amount on demand. But they have not explained at all their false statement that they had actually delivered four hundred cubic yards. Their misconception of the law does not excuse the misstatement of the facts.
Because of this excessive demand, the Knobles have lost their lien on the fund and the exception to the allowance of their claim is sustained.