THE IMPROVED BUILDING AND LOAN ASSOCIATION

*v.* ·

CLARA H. LARKIN et al.

[Decided August 2d, 1917.]

1. To protect property against mechanics' liens a building contract filed must be between parties who in truth, and not in form merely, are the contracting parties.

2. In this case the contract filed was not between the parties who. were in truth the contracting parties, and therefore does not protect the property from mechanics' liens.

3. As a decree in reference to matters collateral to the suit would be void, such matters should not be disposed of in these proceedings.

4. Where mortgages were made after the commencement of the building, it must be shown that the money advanced on them was actually ap-' plied to the erection of the building in order to obtain priority for the mortgages.

5. Where some of the money advanced on mortgages made after the building was commenced was used to take up prior mortgages, such advances are not entitled to priority over mechanics' liens.

6. A vendor who takes a mortgage for unpaid purchase-money·loses his vendor's lien.

On bill, &c.

*Mr. Thomas J. Butler,* for the complainant.

*Mr. Joseph H. Steinhardt* and *Mr. George .E. Clymer,* for Katchen & Rabinovitz.

*Mr. Ovidio Bianchi,* for the Latin American. Construction Company and others.

·*Messrs. Perry & Grosso,* for Clara H. Larkin and others.

*Mr. John A. Bernhard,* for W. Dorfman:

*Messrs. Bilder & Bilder,* for Ernest C. Lum, trustee.

*Mr. Carl F. Hinrichsen,* for Cook & Genung.

STEVENS, V. C.

This is a suit to foreclose a mortgage. The defendants are subsequent mortgagees and lien claimants.

The first question is whether the filing of the building contract, dated June 24th, 1914, made by John T. Kelly, with a partnership known as the Latin American Construction Company, operates to protect the property built upon, against mechanics' lien claims filed subsequently. The insistence is that the contract was made between parties so related as to bring it within the principle of *Young* v. *Wilson, 44 N. J. Law 157.* This case holds that the agreement, the filing of which protects against the lien of other creditors, must be between parties who in verity, and not in form merely, hold toward each other the relation of contracting parties.

In April, 1914, David W. Dorfman, Nicholas A. Norelli and Daniel J. Scrocco formed a partnership to make and perform contracts for constructing buildings of every sort. They filed with the county clerk a certificate of partnership, which bears date April 11th, 1914, and which states their business name to be "The Latin American Construction Company." Dorfman and Norelli were architects, Scrocco was a clerk.

On June 6th, 1914, John T. Kelly entered into a written agreement with J. Frank Larkin, husband of Clara H. Larkin, to purchase for $2,000 the land covered by complainant's mortgage. Kelly seems to have been a business acquaintance of the partners and so impecunious that he was unable to pay any money whatever at the time he agreed to buy. He gave instead his note for $50, endorsed by Norelli. Evidently, the agreement that he made with Mrs. Larkin was intended to promote the plans of the partners. It having come to their knowledge that there were judgments against Kelly, the deed was, with his consent, made to Dorfman, who gave a mortgage of $2,000 to secure the entire consideration money. This deed bears date

June 6th, 1914, but it was not acknowledged or delivered until the following August.

Notwithstanding the fact that Kelly was entirely destitute of means, on June 27th he entered into a building contract with the Latin American Construction Company, by the terms of which he agreed to pay $28,000 for the erection of a large tenement-house on the property in question. This contract was filed June 2d, 1914, and work was begun under it before any deed was given. Evidently, the cost of construction was to be provided for by the construction company, itself possessed of very little money, and by loans to be obtained during the progress of the work. Up to August 6th, 1914, the owner, using that word in the sense of the Mechanics' Lien act, appeared to be Kelly and the work was apparently being done for him. I say *apparently* because it is evident that Kelly's interest was of the slightest. It was so slight that when Dorfman discovered the judgments, Kelly, at the request of the partners, assigned to him, without consideration, his interest both in the land and in the contract. But this created a complication. Dorfman, as a member of the partnership, became both builder and owner, and it was feared by its counsel that the effect of the filing of the contract would be nullified. Thereupon the company, so called, which seems to have proceeded as if it were a corporation, passed a resolution stating an agreement that inasmuch as Kelly had assigned his rights to Dorfman, Dorfman would resign his membership and a new construction contract be made between the company and Dorfman and (I quote its language) "that the amount shall be the same as the one with Mr. John T. Kelly."

At or about the time of the passage of this resolution Dorfman took an assignment of the Kelly contract and joined in the execution of a new contract between himself and the remaining partners, Norelli and Scrocco. This was an exact copy of the other except in its date. It was never filed. Norelli says, "I kept to the Kelly contract, the original on file." It is not at all unlikely that the parties at first regarded the second contract as the one to be deemed in force and, then, in view of the difficulties of the situation, the first; for it appears that they filed the assignment of the first contract three months after they ob-

tained it.   Obviously, the persons from whom they hoped to borrow money would be likely to insist that a building contract should be on file.   A striking illustration of how lightly the obligations of the contract were held, appears in the case of Joseph De la Ferra.   The Kelly contract included the carpenter work.   But when it was sought to subcontract this work De la Ferra, refusing to take a subcontract from the construction company, was given a contract directly with the owner, Dorfman. Under these circumstances, it seems to me to be the unavoidable inference that the parties were contracting parties in form merely; that the case falls within the principle of *Young* v. *Wilson, supra,* and that the contract does not protect the land against the liens of creditors.

The creditors' liens mentioned in the bill are the following:

| | |
|---|---:|
| August 6th, 1914, mortgage to Mrs. Larkin...... | $2,000 |
| August 11th, 1914, mortgage to complainant...... | 18,000 |
| October 20th, 1914, mortgage to Waldemar Dorfman ........................................ | 5,000 |
| May 13th, 1915, mortgage to Amorose............ | 1,000 |
| August 25th, 1914, contract of Iannacone & Ambola. | |
| April 6th, 1915, attachment by Cook & Genung for $400. | |
| December 31st, 1914, judgment of de Stephano, agent, David W. Dorfman for $249.05. | |
| June 10th, 1915, mechanics' lien by De la Ferra for $3,150. | |
| June 24th, 1915, mechanics' lien by Katchen & Rabinovitz ............................... | 1,005 |
| June 28th, 1915, mechanics' lien by Nicholas Norelli ..................................... | 1,695 |
| August 4th, 1915, mechanics' lien by Amorose.... | 1,823 |
| August 11th, 1915, mechanics' lien by Person.... | 150 |
| September 30th, 1915, mechanics' lien by Katchen & Rabinovitz ............................... | 855 |
| October 8th, 1915, mechanics' lien by Shapiro.... | 500 |
| October 15th, 1915, mechanics' lien by Latin American Construction Company.............. | 13,571 |
| February 14th, 1916, mechanics' lien by Amorose, | 1,825 |

The complainant has taken a decree *pro confesso* against David W. Dorfman, Frank Larkin, Ernest Lum, as trustee of the Orange Supply Company; Kelly, de Stephano, Cook & Genung Company, Person, Shapiro and one or two of the other defendants

who appear subsequently to have answered. Most of the answers are drawn without regard to the fundamental rule of equity pleading that he who answers must state his case and answer fully. I shall not, in the very complicated situation presented by the proofs, go outside of the issues raised. The court can hardly be expected to decide matters not set up in the pleadings when a decree made in relation to such matters would be void, even in a collateral proceeding. *Reynolds* v. *Stockton, 43 N. J. Eq. 211; affirmed, 140 U. S. 254.*

While the mortgages precede the lien claims in point of date they are attacked on the ground that the money lent thereon, or part of it, did not go into the building. As I have found that the contract made between Kelly and the Latin American Construction Company of itself affords no protection against liens, the mortgages must be dealt with as provided for in section 15 of the Mechanics' Lien act. They were all made after the building was commenced. The mortgagees must therefore prove that the moneys secured were actually advanced and paid by them and applied to the erection of the building built upon the land mortgaged. Since the decision of the court of errors and appeals in *Franklin Society* v. *Thornton, 96 Atl. Rep. 922,* and of the supreme court in *Young* v. *Haight, 69 N. J. Law 453,* there can be no doubt as to the rule. Says Chief-Justice Gummere, in the latter case: "The only test is whether the money has been loaned for the erection of * * * the building and has been actually applied to that purpose." If labor or material have gone into the building, money lent to pay for such labor or material would, of course, be within the rule, and, equally, it seems to me, would be money lent to pay a contractor or sub-contractor to whom, under his contract, payment is due for work actually done. But money paid to a person charged with the duty of paying such contractor does not come within the rule, unless it be further proved that such money was actually paid over. In the case in hand, proof of payment by complainant to David Dorfman, or to Norelli, or his partner, Scrocco, would not suffice. The proof must go further; it must show that they applied it to the erection of the building by paying it in one of the ways I have mentioned.

The question then is, Were complainant's and Dorfman's moneys so applied? As far as complainant's mortgage is concerned, I do not find in the briefs handed to me any insistence that it was not, except in that of Katchen & Rabinovitz. The answers or notices of Amorose, Waldemar Dorfman, Lum, Norelli and Cook & Genung expressly admit the priority of the lien. Under these circumstances, the complainant is entitled to have the full amount due on his mortgage paid to him before any other liens are paid except the lien of Katchen & Rabinovitz, as to whom he must show that the money went into the erection of the building. The principal contention that Katchen & Rabinovitz make on this head is that $1,200 of the money lent went to pay Mrs. Larkin for the purchase price of her land. The facts are these: Mrs. Larkin, as has been already stated, deeded the property to David Dorfman in August and took a mortgage of $2,000 to secure the price. Dorfman applied to complainant for a loan, which was granted only on condition that it should have a first lien. Mrs. Larkin's solicitor, Mr. Grosso, says:

"Mr. Dorfman and Mr. Norelli and Mr. Giordano, their attorney, called on me frequently and asked me to cancel the mortgage and I told them I wanted some money. However, I was assured by Mr. Norelli, also by Mr. Dorfman, that if I would cancel that mortgage they would pay me as soon as they got the first payment from the building and loan association."

It was canceled on December 3d. On December 5th Mr. Butler, representing complainant, handed to Mr. Norelli, representing the Latin American Construction Company, a check for $3,312.80. As soon as Mr. Grosso heard of it he went to Norelli's office, and on being told by Norelli that he was unable to give the full amount, accepted a check, dated December 7th, for $1,200, and took a deed to Mrs. Larkin, antedated November 24th, reconveying the property, to secure the balance owing ($860). The money was not applied to the erection of the building, unless the word "building" be stretched to include "land." All through the Mechanics' Lien act, "land" and "building" are contradistinguished. In the section under consideration, I think the word "building" is used in its ordinary sense and does not extend to the land built upon.

I will next consider the position of Mrs. Larkin. Under the course of decision in this state there can be no doubt but that her mortgage, being given to secure purchase-money, was prior to the mechanics' liens. The real question is whether she lost her lien when she surrendered her mortgage for cancellation. She did so unless her vendor's lien continued. The law of this state is that the giving of a mortgage for purchase-money is a waiver of the vendor's lien. In the note to the leading case of *Macreath* v *Symmons, 1 Lead. Cas. Eq. 364 (3d Am. ed.)*, it is said: "The lien will be considered as waived whenever any distinct and independent security is taken, whether by mortgage on other land or pledge of goods, or personal responsibility of a third person and also when a security is taken upon the land either for the whole or a part of the unpaid purchase-money, unless there is an express agreement that the implied lien shall be retained." Mr. Pomeroy (*3 Eq. Jur.* § *1252*) says: "The securities which ordinarily produce this effect are the grantee's mortgage on the very land conveyed," &c. In *Acton* v. *Waddington, 46 N. J. Eq. 19; affirmed, 46 N. J. Eq. 611*, Chancellor Runyon said: "The lien will be considered as waived whenever any distinct and independent security is taken, such as a mortgage upon the land, or a pledge of things or personal responsibility of a third person, and the like."

Such being the rule of law, when Mrs. Larkin took her mortgage for the price, she lost her vendor's lien, and what we have to deal with is the mortgage lien and not the vendor's lien. Now, Mrs. Larkin, at the solicitation of Dorfman, or the construction company, surrendered this lien, in order that the lien of complainant's mortgage might attach upon the land as a first lien. She did so, as far as appears, without reservation or limitation and without stipulating for any other lien. Mr. Grosso was content to rely upon the representations that Dorfman, Norelli and their attorney, Mr. Giordano, made to him. He says:

"I was assured by Mr. Norelli and their attorney, Mr. Giordano, that if I would cancel that mortgage they would pay me as soon as they got the first payment from the building association."

The mortgage having been surrendered and canceled it seems to me necessarily to follow that existing liens upon the property fastened themselves upon the mortgage estate thus merged in the equity of redemption. If complainant's lien attached so did the others. No subsequent act of the parties could revive the mortgage lien of Mrs. Larkin so as to give it precedence. The antedating of the deed could not have that effect, for a deed takes effect from delivery, and the delivery, as averred in the answer and shown by the evidence, took place when the note for $860 was given (December 7th).

I reluctantly conclude that Mrs. Larkin's security by way of deed must give way in point of priority, not only to complainant's mortgage, but to Dorfman's and to the mechanics' liens. The Amorose mortgage was not proved.

I next take up the Waldemar Dorfman mortgage. Counsel for Waldemar Dorfman's representatives has prepared a statement claiming that payments amounting to $4,401.61 made on its security went into the erection of the building. Other payments amounting to about $475 went, he admits, to the partners and cannot be traced into the building. If these figures are not accepted as correct by the other counsel, there will have to be a reference to a special master to state an account.

As to the payments for freight and those made to the watchman, the case of *Davis* v. *Mial, 86 N. J. Law 167*, controls. If a watchman was reasonably necessary for the protection of the building during construction the money paid for his wages went into the erection. The salaries paid Norelli and Scrocco, so far as they were compensation for work done on the building, will be allowed.

The lien claim of De la Ferra was reduced to judgment in a suit at law in the Essex circuit court, in which De la Ferra was plaintiff and David W. Dorfman, Clara H. Larkin, Waldemar Dorfman and Joseph E. Amorose were defendants. The judgment was entered May 24th, 1916, for $3,407.44. It adjudges that the lien claim is prior to the mortgages held by defendants Dorfman & Amorose. This judgment being subsequent to the alleged waiver of priority must control.

The Latin American Construction Company's lien claim is based upon the assumption that the contract with Kelly was valid. As against the lien claimants, I have found that it was not. That company must therefore be postponed to the mechanics' lien claimants who have appeared and proved their claims.

I do not find in the briefs that the lien claims of Amorose and Katchen & Rabinovitz are disputed. They and any other undisputed claims will be concurrent liens payable in accordance with section 28 of the Mechanics' Lien act.

Probably when the property comes to be sold—and perhaps it may be desirable to sell at once—other equities, dependent upon the amount the property may bring, will have to be adjusted. Waldemar Dorfman's mortgage is or may be good for the whole amount against David Dorfman. The status of the construction company's claim against Dorfman may be different from its status as against the lien claimants. It is stated that there is a suit pending on this claim. If so, it ought to be prosecuted to judgment. The question of the amount Dorfman owes the company, and on what basis he owes it, is a legal one. The law courts will determine whether there is a lien and how much, lien or no lien, is owing; but the pendency of this suit ought not to delay the sale.

If a reference be necessary the master will report upon the various claims on the principle here laid down and upon any incidental questions that may arise in the course of this very complicated litigation.