The contract price of the building which occasions this controversy was $100,000, plus the cost of extra work at rates specified in the contract.
The contract also provided that estimates of completed work were to be furnished by the contractor to the architect on the first day of each month, and when approved by the latter, eighty per cent. of such estimates were to be paid by the owner on or before the tenth of the same month; "the remaining twenty per cent. of such estimates" was to be paid at the time of final payment; final payment was to be made sixty days after completion of the work; all payments were to be made on certificates. These provisions touching payments are embodied in section 7 of the contract as filed. These provisions are plain and are not susceptible of misunderstanding. Under these provisions of the filed contract laborers and materialmen were entitled to rely upon twenty per cent. of the amount earned by the contractor remaining in the hands of the owner for sixty days after the building should have been completed in accordance with the contract; that fund, whatever its amount, they were entitled to impound by stop-notices served before the expiration of that sixty-day period, or thereafter, except as against any superior rights that may have intervened after the end of the sixty days and prior to the service of the stop-notices. Before the expiration of that period the owner could not, as *Page 48 
against them, lawfully discharge that obligation to the contractor either by payment to the contractor or by acceptance of an order or assignment of the contractor. The owner is entitled to allowances for defective work; but the amount finally due was necessarily subject to stop-notice liens for sixty days after the final completion of the building pursuant to the contract. In a suit between the trustee in bankruptcy of the contractor and the owner that amount has been ascertained to be $7,500. That determination is to be understood as admittedly correct in the present cause, since the bill of interpleader filed herein has not been contested and that amount of money has been paid into court and the owner has been discharged.
It necessarily follows that all stop-notices served by laborers and materialmen prior to the expiration of the period referred to enjoy a lien on that fund in the order of the dates of service of the respective notices — labor claims taking precedence of claims of materialmen — as against an assignment of money due or to grow due under the contract made by the contractor at a prior time. That is the plain language of section 6 of the Mechanics' Lien act, as contained in the 1898 revision of the act. Comp. Stat.p. 3299.
It is my recollection of the testimony that construction work on the building had not been concluded within sixty days prior to the service of the last stop-notice here in question. But in any event it must be said that the building was not finished by the contractor pursuant to the contract until after the last stop-notice had been served, since the deductions allowed the owner were for defective work. With the building unfinished, pursuant to the contract, more than sixty days prior to April 24th, 1924, the date of the last notice served, it is my determination that all the stop-notices otherwise valid are entitled to priority over the assignment.
It seems also clear that liens under such notices must be held to be entitled to priority over an attachment of prior date, since the statute clearly gives to the stop-notice claimants an inchoate lien on the final fund here involved, and with those inchoate liens perfected by notice before the money became payable the consummate liens necessarily relate to *Page 49 
the earliest instant that the contractor became entitled to the payment. The whole plan and purpose of the statute would be defeated if a judgment or attachment could intervene to defeat the statutory liens thus perfected.
Nor can an attachment take precedence over a prior accepted assignment. Assignments are lawful and create an equitable lien; but that lien is by section 6 of the act subordinated to the stop-notice liens of laborers and materialmen; the act does not further subordinate the assignments.
It follows that the order of distribution of the final fund now in court must be — first, to the several stop-notice claimants, whose claims are found to be valid, in the order of the dates of the several notices — preference being given to labor claims; next to the assignment; next to the attaching creditors.
The claim of Smith-Austermuhl Company is for insurance on the building and for supplying to the contractor a bond; both the insurance and the bond being contemplated by the contract.
The statutory right of liens given by the first section of our Mechanics' Lien act is "for labor performed or materials furnished for the erection and construction" of the building. The statutory right of stop-notice liens, in the language of the third section of the act, arises from the refusal of any master workman, contractor or subcontractor to pay any person who may have furnished him "materials used in the erection of any such house or other building" or to pay any "laborer" employed by him "in erecting or constructing any building the money or wages due him." Amendment, P.L. 1917 p. 821. It has been held that an architect who has drawn the plans for a building, and who has also supervised construction of the building, is entitled to a lien under the first section of the act (Turck v. Allard,87 N.J. Law 721), and that a lien may be acquired under that section of the act for transportation and delivery of materials used in the building, since the cost of transportation necessarily enters into the price of materials supplied, either inclusive or exclusive. Davis v. Mial, 86 N.J. Law 167. But, however *Page 50 
liberally the statute may be construed because of its remedial nature, it seems to me impossible to regard this claimant as either a "laborer" or one who has furnished "material used in the erection" of the building. The statute is for the protection of laborers and materialmen; in my judgment, this complainant is neither a laborer or a materialman. The attorney who drew the original contract performed a necessary service, but, obviously, not as a laborer or materialman within the contemplation of our act.
Objection has been made that the claim of a subcontractor is not contemplated by the statute. Adams v. Wells, 64 N.J. Eq. 211,
is cited. Our present act, as amended, includes subcontractors. P.L. 1917 p. 821.
The acceptance of a note is not operative to destroy the right of lien of a laborer or materialman unless the note is received as payment.
Nor can the claims filed by stop-notice claimants with the trustee in bankruptcy, either as general or secured claims, be regarded as destructive of the liens under their stop-notices. The two classes of claims have nothing in common — one seeks the preservation of a lien, the other is in personam. Shoemaker v.Maloney (Court of Errors and Appeals), 132 Atl. Rep. 606.
Nor does an honest error in amount destroy the validity of a claim, especially where the error has in no way contributed to the circumstance of non-payment.
The stop-notice liens also embrace any part of the $7,500 which may be for extra work, since the contract includes extra work. *Page 51