Kanter Cohen, builders, purchased a piece of property, 481 William street, East Orange, subject to a purchase-money mortgage, and gave one in part payment. Before commmencing the building of an apartment house they gave a mortgage to the Plaza Realty Company for $20,000; after commencing they gave it another for $15,000. Then they gave one to the complainant for $125,000; the Plaza Realty Company subordinating its mortgages to the complainant's. When the building was nearly completed Kanter 
Cohen became bankrupt. Mechanics' lien claims were filed by Colonial Woodworking Company, Henry R. Isenberg, Incorporated, and Tobias Grunt. The complainant then filed this bill to foreclose its mortgage. The matter is up on exceptions to the report of the master to whom the cause was referred to determine the amount due the parties and the priorities of their liens. The master found to be due the complainant $122,426.15, and of this there is no criticism. The complainant laid out $105,621.20. The balance of its debt is *Page 341 
made up of premiums, dues, interest, insurance, c. He found the order of priorities to be:
Complainant ..................................................... $56,351.28
Colonial Woodworking Co. ......................... | 5,782.60
Henry R. Isenberg, Inc. .......................... pro rata 7.897.96
Tobias Grunt ..................................... | 8,458.31
Complainant, the balance of its debt ................. $66,074.87
Less the sum of the lien claims ...................... 22,138.87
 __________ 43,936.00
Plaza Realty Co. (its $15,000 mortgage is paid) ................. 22,460.00
Complainant, the balance of its debt ............................ 22,138.87

Then follows other encumbrances in their order of seniority.
The priorities, assuming the claims to be well founded, are equitably adjusted. Hoag v. Sayre, 33 N.J. Eq. 552; Albert andKernahan v. Franklin Arms, Inc., 104 N.J. Eq. 446. InMeister v. J. Meister, Inc., 103 N.J. Eq. 78, Vice-Chancellor Berry held, that peculiar circumstances in that case took it out of the rule of Hoag v. Sayre.
The paramountcy of the complainant's lien to the extent of $56,351.28 is not disputed. It was allowed for "money actually advanced and paid by the mortgagee and applied to the erection of [any new] the building upon the mortgaged land." Section 15 Mechanics' Lien act (Comp. Stat. p. 3303). The complainant claims it advanced more than the amount allowed, and it also contends that having paid off the prior purchase-money mortgages, $5,774.92 and $8,420, respectively, it should be allowed these amounts as preference by way of subrogation. The master's priority allowance to the complainant is more than the proofs justify and it will stand only because no exception is taken.Albert and Kernahan v. Franklin Arms, Inc., supra. The master arrived at the preferential sum by deducting from the amount found due on the complainant's mortgage ($122,426.15), various items ($66,974.87), obviously not applied to the erection of the building, and after correctly finding that $12,601 "actually did go into the building" says as to the balance, $43,750.28, that he is "constrained to find was used in the erection and completion of the building" because the builders, Kanter Cohen, said it was so used "and no testimony or *Page 342 
evidence was introduced tending to disprove their statement in this respect," and further because "it is obvious that large sums were necessary to meet weekly payrolls and to purchase material and the available sources of funds for that purpose must have been advanced by the complainant." The master misconceived the quality of proof required to sustain the burden cast upon the complainant in its effort to supersede the statutory priority of lien claimants. A mortgage executed after the commencement of a building is not entitled to priority over mechanics' liens, for money advanced on the mortgage, unless it is actually applied to the erection of the building. The proofs must trace the money from the mortgagee into the hands of labor or material men.Young v. Haight, 69 N.J. Law 453. The complainant paid $73,554.58 of mortgage money directly to the builders. Two checks, one for $28,250, the other for $25,000, they endorsed to Saul Joseph E. Cohen, trustees, lawyers, who operated the Plaza Realty Company as part of their law office equipment. Three checks, one for $14,000, another for $5,000 and a third for $1,304.58, they deposited to their credit in bank. The remaining money was used by the complainant in redeeming the two prior mortgages and in finishing the building after the bankruptcy. A check for $6,250 is mysteriously missing. The building and loan association attorney who paid the money over to the builders, with notice that the building was in the course of construction, states he does not know what they did with it and seems not to have cared. "They were entitled to it and I just handed it over to them" is his laconic explanation. Kanter Cohen say it was all used to pay for labor and material. That is not true. They were engaged in other operations at the time and the money deposited in bank was used promiscuously. They each drew $60 a week for maintenance, and how much more is not disclosed. To whom and how much was paid to labor and for material they do not explain, and no record is produced in verification. Their check vouchers, which might show application of the money, are not in evidence. The $53,250 handed over by them to Saul Joseph E. Cohen is accounted for with the same indefiniteness, "for labor and material." That is *Page 343 
disproved, for it appears that the Cohens repaid themselves at least $15,000 in cancellation of their Plaza Realty Company mortgage of that sum and used the check of $25,000 to reimburse themselves for moneys previously advanced to Kanter Cohen. And it may be added that they kept their bit for "service charge."Colloq. bonus. The Cohens were the bankers of the builders and advanced them money for payroll and material in anticipation of the mortgage money from the building and loan association. Whether the entire $53,250 was used as reimbursement and whether the reimbursement was for money loaned on this or other jobs of the builders is not made to appear. On the date of the $25,000 check, the Cohens gave Kanter Cohen one for $6,750. Whether that balanced their accounts is not shown, and what Kanter 
Cohen did with the money is not in proof. The books of the Cohens and their check vouchers doubtless would shed some light but they are not produced. Mortgage money paid to a builder, who used it to repay moneys he had borrowed and applied to the construction of a building, is not an item earning priority under section 15 of the Mechanics' Lien law. Improved Building and LoanAssociation v. Larkin, 88 N.J. Eq. 52. It is true, as the master reasons, that large sums of money were expended in labor and material, but the evidence does not warrant the assumption that the complainant's mortgage money was the source from which the expenditures came, nor that the money from that source, which the master was not otherwise able to account for, was used in the erection of the building. To displace the statutory priority of mechanics' lien, by a mortgage given for money to be used for the construction of a building, the proof must be clear, certain and convincing that the money was actually used for labor or material in the structure.
The exception includes the refusal of the master to allow the complainant the sums expended in procuring cancellations of the two prior purchase-money mortgages. Under the reference, the master could only accord the complainant its rights arising out of its mortgage. Money paid in discharge of an anterior mortgage is not within the Mechanics' *Page 344 
Lien act, giving mortgages superiority over mechanics' liens for money applied to the construction of buildings. If the holder of a mortgage subject to mechanics' liens is entitled to be subrogated to the rights of prior mortgages, his equity resides in the mortgages he paid off, and his remedy in their resuscitation. That issue is not involved in this suit. The exception is overruled.
All are agreed that the lien claim of the Colonial Woodworking Company is valid.
The Henry R. Isenberg, Incorporated, lien claim was duly filed and is owing for the balance due on a completed contract for tiling. The attack made upon it, that its debt was discharged in the Kanter Cohen bankruptcy, is without merit. After the builders became bankrupt a fifteen per cent. creditors' compromise was effected. Henry R. Isenberg personally furnished the bankrupts $45,000 necessary for the compromise. All the bankrupt assets were conveyed to a corporation and Isenberg took all the stock as security. The Isenberg company accepted the compromise upon a debt of $15,000 due in addition to the lien claim. The lien claim was not involved in the settlement.
The exception to the Grunt claim goes to its validity because of willfully false charges and willful omissions of discharges. Grunt furnished plumbing material to Ornstein Brothers, who had the contract for the plumbing work. The master found that the charges for materials were correct and that the materials were sold and delivered for use in the building; and the evidence justifies the findings. That some of the materials were diverted by the builder, after delivery, does not affect the right to a lien. Bell v. Mecum, 75 N.J. Law 547.
Grunt had furnished material to Kanter Cohen and to the Ornsteins on other jobs. The Ornsteins were heavily indebted to him in excess of the amount of the lien claim. They had given him a $30,000 mortgage for an anterior debt, which proved valueless; and the contention that taking the mortgage was a waiver of the lien claim is inadmissible. Credits amounting to $2,066 it is claimed should have been applied to the lien claim charges. The evidence shows that *Page 345 
they were appropriately accredited to other indebtedness due Grunt from the Ornsteins. There came a time, August, 1927, when Grunt wanted security; and Kanter Cohen bound themselves for $3,700 to insure delivery of materials to the Ornsteins. It is claimed that Kanter Cohen paid $2,500 on account of their guarantee. Cohen testified that shortly after the deliveries were made he handed to Grunt his check for $1,500, dated August 25th, 1927, on account of his guarantee; and within two weeks another for $1,000. The first is in evidence, the second is not. This testimony was given in the presence and hearing of Grunt and relates the conversation attending the payments, and Grunt did not take the stand to deny it. If it were not true he would, or should have. His bookkeeper labored through his books to reconcile the $1,500 check with the payment of a note of Kanter 
Cohen for $1,500 which had matured a month before, but unsatisfactorily. As to the $1,000 check, he said it was not received; this, because it is not so shown on his books. His employer would not say it was not, and he had the opportunity. Cohen's testimony stands uncontradicted. Credit must be given for the sums. The failure to credit the amounts can reasonably be attributed to accident, due to confusion of the book accounts and notes of the parties, and can not be said to have been willful, to the defeat of the lien claim. Camden Iron Works v. Camden,64 N.J. Eq. 723; Gregory v. Lewis, 87 N.J. Eq. 127. The exception is sustained and the claim modified.