The Eriksen Real Estate Company built an apartment house in Perth Amboy on a capital investment of $1,000. A building and loan association holds a mortgage for $110,000; Bassetti, one for $31,000; Katz, for $10,000, and Fischgrund, for $5,000, and in that order of priority. The latter three, prior in time of execution and recording, have been subordinated to the building and loan association's mortgage. The mortgages were all executed after the commencement of the building. Mechanics' lien claims amount to nearly $100,000. The building and loan mortgage is admitted to be a prior lien, and as to it the suit has been discontinued. Katz's mortgage is conceded to be valid for moneys used in the building, and ahead of the lien claims. The contest is for priority by Bassetti and Fischgrund over the lien claims, they claiming that their mortgages are for "money actually advanced and paid by the mortgagee and applied to the erection of [any new] the building upon the mortgaged land." Mechanics' Lien act (Comp. Stat. p. 3303). The matter was referred to a master to determine the amounts due and the priorities, and it is up on exceptions to his report.
Check vouchers show that $31,000 was advanced to the Eriksen company on the Bassetti mortgage. When it was subordinated to the building and loan mortgage, $10,000 was *Page 347 
paid Macucci on account. The master reported that there was due $21,000, and that the mortgage was prior to the lien claims. The exception is directed to the ruling as to priority. The loan was negotiated with one Macucci, a real estate operator of Jersey City, who claims to have acted for his brother-in-law, Bassetti. Macucci produced his forty-four check vouchers bearing dates between October 4th, 1926, and February 12th, 1927, inclusive, for various amounts totaling $31,000; all, with a single exception, to the order of the Eriksen Real Estate Company. Twenty-seven, for a total of $23,357.54, he claims were given for payroll, and $7,642.46 for other than payroll. Of the latter, one for the architect, $200, and ten, amounting to $4,010.65, for material; one for lawyer's fees, $110; four, for a total of $3,269.81 for dues and interest on the building and loan mortgage, and one for "bills," $52. These last mentioned checks are identified by the endorsements of the parties for whom they were intended. The "payroll" checks were apparently cashed by the Eriksen company, although Macucci's name appears as the last endorser on many of them. For proof that the proceeds were used to pay labor, Macucci rests his case on the naked statement of the two Eriksens, president and treasurer of the Eriksen company, that the whole of the $31,000 was used for material and labor, which obviously was not the fact. The master upheld the priority of the mortgage on their bald assertion, reporting that "the testimony on behalf of the mortgagee clearly shows that the sum of $31,000 [sic] was actually used for labor and materials in the erection and construction of the building. The testimony adduced on behalf of the lienors and objectors, attempting to discredit, is vague and indefinite and does not sustain the burden, to wit, that the moneys so advanced did not go into the building." If the master meant that the burden of proof shifted he misconceived the duty of the mortgagee. Mechanic liens have a statutory priority as of the commencement of the building. To subordinate the lien to a mortgage subsequently executed and recorded, the burden rests with the mortgagee to establish by clear, certain and convincing evidence that the mortgage *Page 348 
money was actually used in the erection of the building. He must trace it into the hands of labor or material men. The evidence does not meet this standard. The money laid out for lawyer's fees and for dues and interest on the building and loan mortgage is not available as a priority item, and there is no proof whatever that the persons to whom checks were given for material, furnished the material, and if furnished, that it was used on this building. There is no memorandum or record of any kind of the labor, singly or in group, working on the building, and when, and the wages paid them. Treasurer Eriksen says he kept a tally of the men on the job but that it is lost. The Eriksen company had a paymaster who doled out the money to the workmen, but neither he nor his payroll is produced. All there is, is Macucci's testimony that the payroll checks were given for payroll, and the Eriksens' statements that they were used for that purpose, none of which is dependable, for it is in evidence that payrolls during the Fischgrund advances, hereinafter discussed, were padded, and that throughout the construction treasurer Eriksen thrived though he had no source of supply to support himself and family other than the payrolls; and, it is also in evidence that the Eriksens agreed to pay bonuses on the Katz and Fischgrund mortgages, and though they and Macucci deny any was promised or taken on the Bassetti loan, it would be a novelty if that were not the case. A safe six per cent. mortgage has its attraction, but one on skimp security, in a distant city, involving installment payment and watchfulness to attain a superiority over lien claims, usually has other allurements than legal interest. Macucci went weekly to Perth Amboy to make estimates. What was the inducement to put him, an agent, if he was only an agent, to all that trouble? Treasurer Eriksen, it is said, admitted an $11,000 bonus. That is not admissible against the Bassetti mortgage, but it is an incentive to investigate. The odd sum of $31,000 arouses curiosity, and nine so-called payroll checks, aggregating $11,500, all out of alignment with an orderly weekly payroll, look suspicious. They are foreign to this, a reconstructed weekly payroll. *Page 349 
 Pay Day Payroll Date of Check Amount Bonus
Oct. 16, 1926 $565 Oct. 15, 1926 $565
 23 435 21 435
 22 $1000
 30 500 Nov. 3 500
Nov. 6 500 4 500
 13 509.54 10 509.54
 18 1000
 20 565 15 165
 18 400
 27 1525 26 600
 26 600
 26 325
Dec. 4, 1926 1360 Dec. 3, 1926 500
 3 860
 11 1149 10 1149
 18 1336 17 1336
 20 2500
 24 1550 24 1550
 28 1000
 31 973.55 31 973.55
 Jan. 4, 1927 1500
Jan. 8, 1927 1172.45 7 889.45
 7 283
 15 1870 11 1000
 14 500
 14 370
 22 1359 22 1100
 22 259
 29 1329 28 1329
 31 1500
Feb. 5, 1927 $1483.25 Feb. 5, 1927 $1483.25
 5 1500
 8 500
 9 1000
 12 1482 11 1482
 __________ ________ __________
 $19,663.79 $11,500.00
Macucci claims to have laid out in
 all not only .......................... $31,000.00
but additional payroll for which he
 produces vouchers ..................... 7,806.25
and for material ........................ 1,000.00
 __________ $39,806.25
Then, we have payroll as reconstructed .............. $19,663.79
For other payroll and material ...................... 8,642.46
Probable bonus ...................................... 11,500.00
 __________ $39,806.25
Macucci was reinbursed by the building and loan
 association ................................................... $8,806.25
Net amount of Bassetti mortgage ................................. $31,000.00

This analysis is not intended as decisive of the issue, but merely to illustrate the futility of omnibus assertions that *Page 350 
mortgage moneys were used in the construction of a building and the impropriety of accepting them as sufficient evidence to subject a mechanics' lien to a construction mortgage. Nor is it to be viewed as holding that the so-called payroll was all used in the construction of the building. The exception is sustained with leave to establish the claim with the preciseness required by law as herein indicated, and on motion a day will be set for a hearing. This course is taken because it is beyond question that some of the Bassetti mortgage money was used for labor and material.
As to the Fischgrund mortgage of $5,000. The master allowed $2,617.05, upon proof of payroll sheets submitted to the mortgagee, weekly, by Eriksen; the receipts of workmen who professedly worked on the building, and by checks for their wages made directly to them. Notwithstanding the care taken by Fischgrund, it appears that he was deceived by payroll padding. That is his misfortune. He can have priority only for so much of his money as was actually applied to the erection of the building. In the payroll of July 1st, 1927, $927.60, an item to Anton Eriksen for $100 is proved to be not for wages and will be disallowed, as well as an item for $7 to the Eriksen Real Estate Company. The "Eddie Smith" items on all the payrolls, a total of $384, will be disallowed. Eddie Smith undoubtedly was Edward Eriksen, connected with the company, and not an employe on the job. The endorsements on the checks are in his handwriting, and some of them carry the endorsement of Astrid Eriksen, whoever he may be. In the payroll of July 8th appears the name of Steve Kazmarik for $40. It is proved he was not a workman on the job and that item will be disallowed. The master erroneously allowed $9.90 in the payroll of July 8th. Restated, the payrolls are the following amounts: July 1st, 1927, $754.60; July 8th, 1927, $365.80; July 15th, 1927, $238.80; July 22d 1927, $211.85; July 29th, 1927, $246.70; August 5th, 1927, $246.70; a total of $2,064.45.
The exception is sustained and the report modified allowing $2,064.45 as a preferential lien. As against the mortgagor, Fischgrund is entitled to a decree for the sum allowed by the master. *Page 351