This suit presents the question of the validity of a lien claimed by the Central Railroad Company under the Municipal Lien law (P.L. 1918 ch. 280), upon money due under a contract entered into by Gallena-Poole, Incorporated, with Monmouth county for certain county road work. The amount of the claim is admitted and the question is submitted on the pleadings, no testimony having been offered.
The railroad's claim, as set forth in its bill of complaint, is that in September, October, November and December, 1924, and January, 1925, it was employed by and performed labor for Gallena-Poole, Incorporated, in the execution of that corporation's said road contract, which labor consisted in transporting, as a common carrier, over its railroad to its *Page 268 
freight station near the place where the road work was being carried on, certain cars containing material used by Gallena-Poole, Incorporated, in the execution of said contract, and in holding for delivery in September and December, 1924, and January, 1925, at or near its freight station, subject to demurrage in accordance with established tariffs, certain cars containing material used by Gallena-Poole, Incorporated, in the execution of said contract, which material the railroad had transported over its tracks.
The claim is divided into two parts (the amount of each being admitted), one for freight charges of $278.86 and the other for demurrage charges of $2,223. The bill of lading, or contract, under which the shipments were made, is not before me and I have no way of knowing, except from the railroad's statement of its claim, who the consignor of the material was, the terms of the contract of shipment, or whether Gallena-Poole, Incorporated, or a consignor was primarily liable for freight and demurrage charges. If the material was consigned by some dealer to Gallena-Poole, Incorporated, and under the terms of the contract with the railroad the consignor was primarily liable for the carrier's charges, then perhaps the railroad has no claim against Gallena-Poole, Incorporated, for which a lien can be enforced under the Municipal Lien law. But the railroad's statement of its claim is that it was employed by Gallena-Poole, Incorporated, to transport the material and since that assertion is not denied, I shall assume that Gallena-Poole, Incorporated, had consigned the material to itself and had agreed to pay the railroad's charges.
By section 1 of the Municipal Lien law, two classes are given protection, namely, those who perform labor and those who furnish material. It seems that our courts have applied this act and the Mechanics' Lien act (Comp. Stat. p. 3290) to the limit by holding that transporting material to a job is performing labor within the meaning of those statutes (Davis v. Mial,86 N.J. Law 167; Improved B. L. v. Larkin, 88 N.J. Eq. 52; WestJersey and Seashore Railroad Co. v. Cape May, 100 N.J. Eq. 181;Hammill v. Commercial, c., *Page 269 Co., 137 Atl. Rep. 884), and following those precedents I must hold that the Central Railroad Company, as a subcontractor performing labor, is entitled to payment for its freight charges out of the fund in question.
But I do not think it follows that the demurrage charge, which is eight times the actual transportation charge, can be construed to be for labor performed. Demurrage is compensation to a railroad for delay of cars and tracks in their employment or use by the road; or a penalty for failure to promptly unload a car, or a service charge for the continued use of a car after its arrival at its destination until the consignee is ready to unload it. The Municipal Lien law provides a lien only for labor and material furnished directly toward the performance of a contract for public work and not for compensation or penalty for use of instrumentalities furnished to the contractor. Cope v. C.B.Walton Co., 77 N.J. Eq. 512; Delaware, c., Co. v. MercerCounty, 88 N.J. Eq. 506; Harry Pinsky Son Co. v. Wike,101 N.J. Eq. 45; Cramer v. Freeholders, 147 Atl. Rep. 639; WestJersey and Seashore Railroad Co. v. Cape May County, 105 N.J. Eq. 457.
Had the material transported been unloaded and stored until used on the contract work, the warehouseman could have no lien for storage charges. Evidently Gallena-Poole, Incorporated, was not ready to use the material when it arrived at the freight station and it may well be that in the three months for which demurrage is charged, rather than incur the labor expense of unloading the material from the cars, hauling it elsewhere for storage and subsequently reloading it and hauling it to the job, Gallena-Poole, Incorporated, thought it would be less expensive to permit it to remain in storage in freight cars, subject to demurrage. For this service the railroad had a special lien on the contents of the cars (Cum. Supp. Comp. Stat. p. 2916 §§170-47), but it chose to waive that lien when it released the material to Gallena-Poole, Incorporated. I conclude that it is not entitled to a lien on the fund here in question for so much of its claim as represents demurrage. *Page 270